UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| LAMONT BROWN, | : | |
| Plaintiff, | : | Hon. Dennis M. Cavanaugh |
| vs. | : | **OPINION** |
| LYDELL B. SHERRER and ERIC STOKES, | : | |
| | : | Civil Action No.: 05-cv-04749 (DMC) |
| Defendants. | : | |

DENNIS M. CAVANAUGH, U.S.D.J.

This matter comes before the Court upon a motion by Lydell B. Sherrer and Eric Stokes ("State Defendants"), to dismiss the Complaint filed by *pro se* Lamont Brown ("Plaintiff") for failure to state a claim, or in the alternative, for summary judgment. Because Defendants have presented to this Court matters outside the pleadings, the motion will be treated as a motion for summary judgment pursuant to Fed. R. Civ. P. 56. No oral argument was held pursuant to Federal Rule of Civil Procedure 78. For the following reasons, State Defendants' motion is **granted**.

**I. Background**

Plaintiff filed the Complaint in the instant action on September 30, 2005, against State Defendants, alleging a violation of his constitutional and civil rights pursuant to 42 U.S.C. § 1983.[1] Plaintiff's Complaint alleged that State Defendants violated his Eighth Amendment

---

[1] Plaintiff also named Angel L. Santiago ("Santiago"), Associate Administrator of Northern State Prison, as a defendant, but Santiago is not a party to this action because service has not been executed upon him.

rights by failing to protect him from an assault by other inmates at Northern State Prison ("NSP") on June 24, 2005. (Complaint at ¶ 8, Statement of Uncontested Material Facts ("Statement of Facts") at ¶ 3). Plaintiff simultaneously filed an application to proceed in forma pauperis. On March 13, 2006, State Defendants filed their Brief in Support of their Motion to Dismiss, or in the alternative, for Summary Judgement in Lieu of an Answer ("Def. Brief").

    *A. Inmate Facility and Unit Assignment Procedures*

Male offenders in the State of New Jersey are initially admitted to the Central Reception and Assignment Facility ("CRAF") or the Adult Diagnostic and Treatment Center, where they begin the classification process. (Affidavit of Angel L. Santiago ("Santiago Affidavit") at ¶ 4; see N.J.A.C. 10A:9-2). After a series of preliminary interviews and medical evaluations, offenders assigned to CRAF meet with the Inter-Institutional Classification Committee to determine the offender's custody level and initial facility assignment. (Id.)

An inmate at NSP will be assigned to general population or a specialized housing unit based on a consideration of the following factors: inmate's custody level, medical history, prior offense history, escape history, and the needs of the correctional facility. (Santiago Affidavit at ¶ 5). Housing assignments within NSP are made by the Institutional Classification Committee pursuant to N.J.A.C. 10A:9-3.1. (Santiago Affidavit at ¶ 6). The Institutional Classification Committee at NSP is made up the following officials: Superintendent or Assistant Superintendent; Director of Education or Designee; Social Work Supervisor or Designee; Director of Custody Operations or Custody Supervisor Designee; and Classification Officer (non-voting member). (Id.)

    *B. Plaintiff's Assignment to NSP*

The following are the relevant and undisputed facts. State Defendant Sherrer is the Administrator of NSP. (Affidavit of Lydell B. Sherrer ("Sherrer Affidavit") at ¶ 2). State Defendant Stokes is the Assistant Superintendent of NSP and a member of NSP's Classification Committee. (Affidavit of Eric Stokes ("Stokes Affidavit") at ¶¶ 2, 3). Plaintiff was transferred from New Jersey State Prison ("NJSP") in Trenton, New Jersey to NSP in Newark, New Jersey on April 5, 2005. (Statement of Facts at ¶ 4). At the time of his arrival at NSP, Plaintiff had several "Keep Separate" notations in his file. (Statement of Facts at ¶ 5).[2] The only inmate assigned to NSP who was supposed to be separated from Plaintiff was Phillip Everson, an inmate assigned to NSP's Security Threat Group Management Unit ("STGMU"). (Id., Santiago Affidavit at ¶ 17). Another inmate at NSP, Charles Connors, was not placed on Plaintiff's "Keep Separate" list until December 2005. (Statement of Facts at ¶ 5).

Plaintiff was housed in the Temporary Closed Custody unit ("TCC") at NSP from April 29, 2005 to June 23, 2005. (Statement of Facts at ¶ 6). On June 1, 2005, Plaintiff submitted a request to be transferred to another prison or placed in the general population of NSP. (Statement of Facts at ¶ 7). On the request form, Plaintiff stated that he did not need protective custody and wanted to be in the general population. (See Routine Inmate Request Form dated June 1, 2005, attached as Exhibit "C" to Santiago Affidavit). Due to the many "Keep Separate" notations in Plaintiff's file, the Administration at NSP could not arrange a transfer to another prison. (Statement of Facts at ¶ 9). After the Special Investigation Division ("SID") at NSP informed NSP's Administration that it would not be investigating Plaintiff's possible placement

---

[2] A "Keep Separate" notation next to an inmate's name within another inmate's file indicates that the second inmate should not be assigned to the same correctional facility or the same unit within a correctional facility as the first inmate. See N.J.A.C. 10A: 1-2.2.

3

on protective custody, the NSP Administration released Plaintiff into NSP's general population on June 23, 2005. (Statement of Facts ¶¶ at 10-12). Prior to his release into NSP's general population, Plaintiff never verbally informed Mr. Santiago or State Defendant Sherrer that he feared for his safety if released into the facility's general population and never completed an Inmate Interview Request Form detailing any fears he may have had regarding his release into the general population. (Santiago Affidavit at ¶ 14; Sherrer Affidavit at ¶ 3).

The next day, June 24, 2005, Plaintiff was assaulted by other inmates in A-Housing Yard. (Statement of Facts at ¶ 13). NSP Sergeant Ryan Valentine searched all inmates in the area for weapons or bruises, but no evidence of any inmates' involvement in the assault was found. (Statement of Facts at ¶ 14). In an interview a few days after the attack, Plaintiff stated that he thought his attackers were members of the STGMU "Bloods." (Statement of Facts at ¶ 16). However, Plaintiff was unable to positively identify the inmates involved in the assault. (Statement of Facts at ¶ 17).

On July 11, 2005, Plaintiff submitted a request to speak to State Defendant Sherrer regarding his transfer to another facility. (Statement of Facts at ¶ 21). NSP staff advised Plaintiff that he would be transferred to another facility no later than August 1, 2005. (Statement of Facts at ¶ 22). On August 1, 2005, Plaintiff was transferred to Bayside State Prison in Leesburg, New Jersey (Statement of Facts at ¶ 23).

## II. Standard for Summary Judgment

Under the Federal Rules of Civil Procedure, summary judgment is only appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56. Rule 56(e) requires that the non-moving party set forth specific facts showing a genuine issue for trial when a motion for summary judgment is made.

Id.; see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986).  Only disputes over facts that might affect the outcome of the lawsuit will preclude the entry of summary judgment.  Anderson, 477 U.S. at 247-248.

The burden is on the moving party to demonstrate the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); see Adickes v. S.J. Kress & Co., 398 U.S. 144, 157 (1970).  An issue is "genuine" if a reasonable jury could possibly hold in favor of the non-moving party with regard to that particular issue.  Anderson, 477 U.S. at 247-248.  In deciding a motion for summary judgment, a court must view the facts in the light most favorable to the non-moving party and must resolve any reasonable doubt as to the existence of a genuine issue of material fact against the moving party.  Matsushita Elec. Indus. Co., Ltd., 475 U.S. 574, 587 (1986).

### III.  Analysis

In support of their motion for summary judgment, the State Defendants argue that (1) they did not act with deliberate indifference in protecting the health and safety of the Plaintiff, (2) the Plaintiff's claim is barred by the doctrine of sovereign immunity under the Eleventh Amendment, and (3) the Plaintiff's claim is barred because a § 1983 claim cannot be premised on a theory of vicarious liability.

 *A. State Defendants Did Not Act with Deliberate Indifference by Placing Plaintiff in*
  *NSP's General Population*

"A prison official's deliberate indifference to a substantial risk of serious harm to an inmate violates the Eighth Amendment" of the United States Constitution.  Farmer v. Brennan, 511 U.S. 825, 828.  However, mere negligent conduct on the part of prison official will not justify the imposition of liability.  Davidson v. Cannon, 474 U.S. 344, 347 (1986); see also

Estate of Davis v. Johnson, 745 F.2d 1066, 1071 (7th Cir. 1984) ("[i]n order to infer callous indifference when an official fails to protect a prisoner from the risk of attack, there must be a 'strong likelihood' rather than a 'mere possibility' that violence will occur").

To successfully establish a failure to protect claim, an inmate must demonstrate: (1) that he is incarcerated under conditions posing a substantial risk of serious harm, and (2) that the defendant prison official acted with deliberate indifference. Farmer, 511 U.S. at 834-837. To satisfy the first prong of the deliberate indifference analysis, the inmate must prove that the alleged "punishment" is "objectively sufficiently serious." Id. at 834. To satisfy the second prong of the analysis, the inmate must prove that the defendant prison official had a sufficiently culpable state of mind. Id. at 838. To establish that the prison officials had the requisite culpable state of mind, the inmate must show that the prison official "[knew] of and [disregarded] an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harms exists, and he must also draw the inference. Id.

In the instant action, State Defendants did not act with deliberate indifference in protecting Plaintiff's health and safety. State Defendants were not aware of any specific facts that could have led them to infer that Plaintiff would be endangered if placed in NSP's general population. Upon his arrival at NSP, Plaintiff was assigned to the TCC due to the many "Keep Separate" notations in his classification file. (Statement of Facts at ¶ 6). About two month after

his arrival at NSP, Plaintiff began to complain about his placement in TCC and requested a transfer to another facility or placement in NSP's general population.[3]

NSP officials did not release Plaintiff into the prison's general population until SID determined that it would not pursue any investigation leading to the possible placement of Plaintiff in protective custody. (Statement of Facts at ¶ 10). It should also be noted that the one "Keep Separate" alert in Plaintiff's file who was assigned to NSP, Phillip Everson, was housed in the STGMU. (Statement of Facts at ¶ 5). Since Everson was assigned to a specialized housing unit at NSP and Plaintiff was moved into the prison's general population, personal contact between Everson and Plaintiff was not possible. (Santiago Affidavit at ¶ 19).

Furthermore, Plaintiff never warned State Defendants that he feared for his health and safety if released into NSP's general population. Plaintiff never personally spoke with State Defendants about any fears he had regarding his possible placement in the general population. Also, Plaintiff did not submit any forms to NSP's Administration that would lead State Defendants to believe that there was a legitimate threat to Plaintiff's safety if he was placed in the general population. Because State Defendants had no basis to infer a specific threat to Plaintiff's health and safety, the Court finds that the State Defendants did not act with deliberate indifference by placing Plaintiff in NSP's general population. As such, Plaintiff's § 1983 claim against State Defendants must be dismissed. In the interest of completeness, the Court will also address State Defendants' remaining arguments.

    *B. Plaintiff's Claim Against State Defendants is Barred by the Doctrine of Sovereign*

---

[3]"Mr. Eric Stokes... get me to another prison if you don't want to let me back on the compound [NSP's general population]... I'm really stressing and need to be in general population... I don't need PC [protective custody]." Routine Inmate Request Form submitted by Plaintiff, attached as Exhibit C to Santiago Affidavit.

*Immunity Under the Eleventh Amendment*

State Defendants also argue that Plaintiff's claim against Administrator Sherrer and Assistant Superintendent Stokes in their official capacities is barred by New Jersey's sovereign immunity under the Eleventh Amendment. (Def. Br. at 13). The defendant bears the burden of proving that it is entitled to sovereign immunity. Chisolm v. McManimon, 275 F.3d 315, 323 (3d Cir. 2001); see Christy v. Pa. Tpk. Comm'n, 54 F.3d 1140, 1144 (3d Cir. 1995). Sovereign immunity applies to state agencies and state officials acting in their official capacities where the defendant demonstrates that "the state is the real, substantial party in interest." Bennett v. City of Atlantic City, 288 F.Supp.2d 675, 683 (D.N.J. 2003) (quoting Ford Motor Co. v. Dep't of Treasury, 323 U.S. 459 (1945)).

The state is considered the real, substantial party in interest if (1) "the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration," or (2) "if the effect of the judgment would be 'to restrain the Government from acting, or to compel it to act." College Sav. Bank v. United States, 948 F. Supp. 400, 409 (D.N.J. 1996) (quoting Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 101, n.11). Additional factors considered by a court in determining whether the state is a real, substantial party in interest are "the status of the entity under state law and the entity's degree of autonomy." Chisolm, 275 F.3d at 323; see Fitchik v. N.J. Transit Rail Operations, Inc., 873 F.2d 655, 659 (3d Cir. 1989)(en banc). "Although no single factor is dispositive, [it has often been] held that the most important factor [in the sovereign immunity analysis] is whether a judgment resulting from the suit would be paid from the state treasury." Chisolm, 275 F.3d at 323.

There are two exceptions to a state's sovereign immunity. First, a state can consent to suit in federal court. Atascadero State Hosp. v. Scanlon, 473 U.S. 234, 238 (1985). Second,

8

Congress can abrogate state sovereign immunity "in the exercise of its power to enforce the Fourteenth Amendment." Antonelli v. New Jersey, 310 F. Supp. 2d 700, 713 (D.N.J. 2004) (quoting College Sav. Bank v. Fla. Prepaidpostsecondary Educ. Expense Bd., 527 U.S. 666, 670 (1999)). Neither of the aforementioned exceptions is applicable to the instant action. State Defendants, in their role as prison officers of the State of New Jersey, are entitled to sovereign immunity under the Eleventh Amendment.

### C. Plaintiff's Claim is Barred Because a § 1983 Cannot be Premised on a Theory of Vicarious Liability

In a civil rights action, Plaintiff must demonstrate that the defendant had "personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988); see also Rasmussen v. Larson, 863 F.2d 603, 605 (8th Cir. 1988) (holding that § 1983 would not lie against supervisory officers who were not personally or directly involved in the alleged misconduct). "Personal involvement can be shown through allegations of personal direction or of actual knowledge or acquiescence." Dellarciprete, 845 F.2d at 1207.

In the instant action, Plaintiff claims that State Defendants violated his constitutional rights by releasing him into the general population and failing to protect him from his attackers. (Complaint at ¶ 8). However, Plaintiff fails to allege and State Defendants maintain that State Defendants had no personal involvement in the decision to release Plaintiff into NSP's general population. (Complaint at ¶ 8, Sherrer Affidavit at ¶ 7, Stokes Affidavit at ¶ 4). The decision to release Plaintiff into the general population was ultimately made by Mr. Santiago, the Assistant Administrator at NSP, after he consulted with SID and reviewed Plaintiff's complaint regarding

his initial assignment to the TCC. (Santiago Affidavit at ¶ 19). For this reason and the reasons stated above, State Defendants' motion for summary judgment is granted.

### IV. Conclusion

For the reasons stated, it is the finding of this Court that State Defendants' motion for summary judgment is **granted**. An appropriate Order accompanies this Opinion.


                                      S/ Dennis M. Cavanaugh
                                      Dennis M. Cavanaugh, U.S.D.J.

Date:         July 11, 2006
Original:    Clerk's Office
cc:           All Counsel of Record